1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

MARGARET L. WARNER,                          NO.  C13-757-JCC-JPD

9
                              Plaintiff,

10
        v.                                   REPORT AND
                                             RECOMMENDATION
11
CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

12
                              Defendant.

13

14        Plaintiff Margaret L. Warner appeals the final decision of the Commissioner of the

15   Social Security Administration ("Commissioner"), which denied her application for

16   Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C.

17   §§ 1381-83f, after a hearing before an administrative law judge ("ALJ").  For the reasons set

18   forth below, the Court recommends that the Commissioner's decision be affirmed.

19                        I.        FACTS AND PROCEDURAL HISTORY

20        Plaintiff is a 46-year-old woman with one year of college education.  Administrative

21   Record ("AR") at 211, 216.  Her past work experience includes employment as an emergency

22   medical technician in training.  AR at 216.  Plaintiff was last gainfully employed in 1998.  *Id.*

23        On August 5, 2010, Plaintiff filed an application for SSI, alleging an onset date of April

24   1, 1998.  AR at 188-92.  Plaintiff asserts that she is disabled due to cervical degenerative disc

REPORT AND RECOMMENDATION - 1

disease with stenosis, radiculopathy, ulcers, seizures, prolapsed rectum and bladder, and multiple herniated discs.  AR at 215.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 83-90, 93-100.  Plaintiff requested a hearing, which took place on December 11, 2011.  AR at 40-80 .  On January 31, 2012, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 18-29.

After reviewing additional evidence, the Appeals Council denied Plaintiff's request for review, AR at 1-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 29, 2013, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1, 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a

1    whole, it may neither reweigh the evidence nor substitute its judgment for that of the

2    Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is

3    susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

4    must be upheld. *Id.*

5        The Court may direct an award of benefits where "the record has been fully developed

6    and further administrative proceedings would serve no useful purpose." *McCartey v.*

7    *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292

8    (9th Cir. 1996)). The Court may find that this occurs when:

9        (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
     claimant's evidence; (2) there are no outstanding issues that must be resolved
10       before a determination of disability can be made; and (3) it is clear from the
     record that the ALJ would be required to find the claimant disabled if he
11       considered the claimant's evidence.

12   *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

13   erroneously rejected evidence may be credited when all three elements are met).

14                          IV.    EVALUATING DISABILITY

15       As the claimant, Ms. Warner bears the burden of proving that she is disabled within the

16   meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

17   Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

18   any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

19   expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§

20   423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments

21   are of such severity that she is unable to do her previous work, and cannot, considering her age,

22   education, and work experience, engage in any other substantial gainful activity existing in the

23   national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

24   99 (9th Cir. 1999).

1    The Commissioner has established a five step sequential evaluation process for

2    determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

3    404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

4    step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

5    any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

6    one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

7    §§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the

8    Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

9    or more medically severe impairments, or combination of impairments, that limit her physical

10   or mental ability to do basic work activities.  If the claimant does not have such impairments,

11   she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

12   impairment, the Commissioner moves to step three to determine whether the impairment meets

13   or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

14   416.920(d).  A claimant whose impairment meets or equals one of the listings for the required

15   twelve-month duration requirement is disabled.  *Id.*

16   When the claimant's impairment neither meets nor equals one of the impairments listed

17   in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

18   residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

19   Commissioner evaluates the physical and mental demands of the claimant's past relevant work

20   to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

21   the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.    DECISION BELOW

On January 31, 2012, the ALJ found:

1.    The claimant has not engaged in substantial gainful activity since July 27, 2010, the application date.

2.    The claimant's seizure disorder and degenerative disc disease of the cervical and lumbar spine are severe impairments.

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.    The claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a) except that she should not climb ladders, ropes or scaffolds.  The claimant can occasionally climb stairs.  She can frequently stoop.  The claimant can occasionally crouch, kneel and crawl.  She can frequently reach.  The claimant should avoid concentrated exposure to vibrations, fumes, odor, dust and gases.  She should avoid all use of moving machinery and all exposure to unprotected heights.

5.    The claimant has no past relevant work.

6.    The claimant was born on XXXXX, 1967, and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed.[2]

7.    The claimant has at least a high school education and is able to communicate in English.

8.    Transferability of job skills is not an issue because the claimant does not have past relevant work.

---

[2]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 5

9.       Considering the claimant's age, education, work experience, and
         residual functional capacity, there are jobs that exist in significant
         numbers in the national economy that the claimant can perform.

10.      The claimant has not been under a disability, as defined in the Social
         Security Act, since July 27, 2010, the date the application was filed.

AR at 20-29.

## VI.       ISSUES ON APPEAL

The principal issues on appeal are:

1.       Whether the ALJ erred in finding that Plaintiff had no severe mental
         impairments; and

2.       Whether the ALJ erred in excluding chronic pain syndrome and joint
         hypermobility syndrome as severe impairments.

Dkt. 15 at 1.

## VII.      DISCUSSION

A.       <u>The ALJ Did Not Err in Assessing Opinion Evidence Regarding Plaintiff's Mental
         Impairments.</u>

The ALJ noted that Plaintiff had been diagnosed with major depression disorder and

antisocial personality disorder, but he found these to be non-severe impairments.  AR at 21-23.

He indicated that his review of the "paragraph B" criteria indicated that Plaintiff's mental

impairments were not severe, because she had only mild limitation as to activities of daily

living, social functioning, and concentration, persistence, and pace, and no episodes of

decompensation of extended duration.  AR at 22.  His step-two findings also mentioned that

Plaintiff had never received treatment for a mental impairment during the relevant period, and

that she "typically denied feeling depressed and her mood and affect were usually appropriate."

AR at 21 (citing AR at 407, 431, 448, 591, 615).  The ALJ also assigned significant weight to

most of the October 2010 opinion written by Plaintiff's consultative psychological evaluator,

Sylvia Thorpe, Ph.D., other than her Global Assessment of Functioning ("GAF") score and her

opinion that Plaintiff could have trouble working with men she perceived to be abusive.  AR at 21.[3]  He went on to assign less weight to the opinions of State agency psychological consultants due to lack of mental-health treatment and inconsistency with other evidence of record.  AR at 22.  According to Plaintiff, the ALJ erred in his assessment of the opinion evidence, because he failed to provide sufficient reasons to discount those opinions and should have found that her mental impairments were severe and met/equaled a Listing.

        1.     *Standards at Step Two*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling 85-28).

        2.     *Dr. Thorpe's Opinion*

The ALJ rejected two aspects of Dr. Thorpe's opinion — her GAF score of 50 and her opinion that Plaintiff may have trouble working with men she perceives to be abusive — and the Court will address each in turn.

---

      [3] The ALJ also noted that Plaintiff described her 2009 medication overdose to Dr. Thorpe as a suicide attempt (AR at 443), even though she reported it at the time as an attempt to manage acute foot pain after a truck ran over her foot (AR 372).  AR at 21-22.  The ALJ did not explain the significance of this discrepancy on his assessment of Dr. Thorpe's opinion.  *Id.* Because the ALJ did not reject any particular portion of Dr. Thorpe's opinion based on this discrepancy, and instead apparently intended this note to reflect on Plaintiff's credibility, any objection to the ALJ's interpretation of medical evidence surrounding the 2009 medication overdose is a red herring because Plaintiff has not challenged the ALJ's adverse credibility determination.

REPORT AND RECOMMENDATION - 7

1              a.      GAF Scores

2         Plaintiff argues that Dr. Thorpe's opinion indicates that her major depressive and

3    personality disorders are severe due to the GAF score of 50 she assigned.  Dkt. 15 at 6.

4    Plaintiff is mistaken as to the utility of GAF scores in the ALJ's disability inquiry, however.  A

5    GAF score of 50 is *not* "equivalent to saying that plaintiff meets or equals a listed impairment

6    at step 3" (Dkt. 15 at 6); in fact, no GAF score is equivalent to any particular level of severity

7    for disability benefits purposes, because the GAF scale does not directly correlate to Social

8    Security regulations.  *See* 65 Fed. Reg. 50,746, 50,765-766 (Aug. 21, 2000); *Zerba v. Comm'r*

9    *of Social Sec. Admin.*, 279 Fed. Appx. 438, 439 (9th Cir. 2008) (holding that an ALJ did not err

10   in finding a claimant's depression not severe despite the consultative examiner's GAF score of

11   45).  Thus, GAF scores are not as determinative as Plaintiff argues.

12        Furthermore, the ALJ explained why he discounted Dr. Thorpe's GAF score: he

13   referenced Dr. Thorpe's Axis IV findings (related to Plaintiff's psychosocial stressors,

14   including caring for young children) as an indication that Dr. Thorpe's GAF score of 50 was

15   assessed in consideration of factors unrelated to her disability.  AR at 21 (referencing AR at

16   444).  Given that GAF scores are intended to account for psychosocial stressors, some of

17   which are not relevant to eligibility for disability benefits, and Dr. Thorpe's opinion identified

18   particular psychosocial stressors unrelated to disability, the ALJ's interpretation of Dr.

19   Thorpe's opinion is not inaccurate.  *See* Diagnostic and Statistical Manual of Mental Disorders

20   32-33 (4th ed. 2000).  Moreover, the ALJ considered and discussed the specific functional

21   limitations identified by Dr. Thorpe, and was not bound to address her GAF score at all.  *See*

22   *Chavez v. Astrue*, 699 F.Supp.2d 1125, 1135 (C.D. Cal. 2009) "[A]n ALJ is not required to

23   give controlling weight to a treating physician's GAF score; indeed, an ALJ's failure to

24   mention a GAF score does not render his assessment of a claimant's RFC deficient.").

1    Accordingly, Plaintiff has not identified a legal error related to the ALJ's assessment of Dr.

2    Thorpe's GAF score.

3                    b.          Limitation on Working with Men Perceived to be Abusive

4          The ALJ found that Dr. Thorpe's opinion that Plaintiff "may have trouble working with

5    men whom she perceives as being abusive" (AR at 445) did not support a finding that

6    Plaintiff's mental impairments were severe.  According to the ALJ, this "possible trouble" does

7    not necessarily indicate an impairment because "an individual with no mental impairment

8    could have the same problem."  AR at 21.  Plaintiff contends that there is no basis for the

9    ALJ's interpretation of Dr. Thorpe's opinion, and that he overlooked the effect of her

10   experience with domestic violence.  Dkt. 15 at 7-8.

11         The Court construes[4] the ALJ's objection to Dr. Thorpe's opinion regarding Plaintiff's

12   ability to work with men whom she perceives to be abusive as an objection on relevance

13   grounds: because people in general, with or without a mental impairment, may have trouble

14   interacting with men they perceive to be abusive, that particular limitation does not necessarily

15   suggest that Plaintiff's ability to perform work activities is significantly impacted.  The Court

16   finds this interpretation to be reasonable, given that working with men perceived to be abusive

17   is not a "basic work activity."  *See* 20 C.F.R. § 416.921 (providing examples of the "abilities

18   and aptitudes necessary to do most jobs").  Because the ALJ's inference is reasonable, it

19   should be affirmed.  *See Morgan v. Comm'r of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th

20

21         [4] The Commissioner's interpretation of the ALJ's decision focuses on the phrase
     "possible trouble," construing it to mean that the ALJ rejected Dr. Thorpe's opinion because it
22   was phrased in speculative terms.  Dkt. 20 at 5-6.  The ALJ did not explicitly say as much,
     however, and the remainder of that sentence suggests to the Court that the ALJ focused on the
23   relevance of this limitation on the Plaintiff's ability to do basic work activities.  The Court is
     entitled to infer the meaning of the ALJ's decision.  *See Magallanes*, 881 F.2d at 755 ("As a
24   reviewing court, we are not deprived of our faculties for drawing specific and legitimate
     inferences from the ALJ's opinion.").

REPORT AND RECOMMENDATION - 9

1    Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the

2    ALJ's conclusion that must be upheld.").

3         3.    *State Agency Psychological Consultant Opinions*

4         State agency psychological consultants opined that Plaintiff's depression, antisocial

5    personality disorder, and substance addiction disorders caused moderate limitations in her

6    ability to understand, remember, and carry out detailed instructions; maintain attention and

7    concentration for extended periods; complete a normal workday and workweek without

8    interruptions from psychologically based symptoms and to perform at a consistent pace

9    without an unreasonable number and length of rest periods; and interact appropriately with the

10   general public.  AR at 461-77, 520.  The ALJ assigned "less weight" to these opinions because

11   (1) Plaintiff did not receive "any mental health treatment and, more often than not, she denied

12   feeling depressed when asked"; (2) "[h]er interactions with treatment providers, her demeanor

13   at the hearing, and her close relationship with family show she has no more than mild difficulty

14   in maintaining social functioning"; (3) Plaintiff did not report any problem with paying

15   attention; (4) Plaintiff "appears to be able to control her marijuana use"; and (5) the State

16   agency consultants did not examine Plaintiff, but Dr. Thorpe did.  AR at 22.

17        Plaintiff does not allege that any of these reasons are inaccurate, but contends that they

18   are insufficient because the State agency consultants themselves considered most of those

19   reasons — they specifically noted that Plaintiff had no mental health treatment, and that she

20   had a history of appropriate interactions with doctors and staff, friends, and family members,

21   and that she continued to use marijuana — and yet still opined that Plaintiff had mental

22   impairments and some moderate limitations as a result.  Dkt. 15 at 11.  But Dr. Thorpe was

23   aware of those same factors, and yet indicated that Plaintiff was less limited than the State

24   agency consultants did.  *See* AR at 441-45.  In the face of this conflicting medical evidence,

REPORT AND RECOMMENDATION - 10

and in light of the undisputed evidence of Plaintiff's longitudinal medical record, demeanor, and self-reported symptoms, the ALJ's specific and legitimate reasons justify his decision to discount the opinions of the State agency consultants. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) ("The ALJ is responsible for resolving conflicts in the medical record."). Because the ALJ was entitled to discount the State agency consultant opinions, the ALJ did not need to account for the limitations they identified, including the limitation on public contact. *See Bayliss*, 427 F.3d at 1217 (indicating than an ALJ need not account for limitations properly rejected).

B.   <u>The ALJ Did Not Err in Excluding Chronic Pain Syndrome and Joint Hypermobility Syndrome as Severe Impairments.</u>

The ALJ found that Plaintiff had been diagnosed with hypermobility syndrome, but that this impairment is not severe because there is no medical evidence describing Plaintiff's joints popping out of sockets or any other significant effect on the ability to perform basic work functions. AR at 21. The ALJ did not reference Plaintiff's chronic pain syndrome diagnosis, although it had been mentioned in several treatment notes (AR at 403, 433, 522, 584). Plaintiff assigns error to the ALJ's failure to include hypermobility syndrome and chronic pain syndrome as severe impairments at step two, and the Court will consider each diagnosis in turn.

1.   *Hypermobility Syndrome*

The ALJ's analysis of Plaintiff's hypermobility syndrome stresses the lack of evidence of resulting functional impairment:

The claimant testified that her joints popped out of socket very easily, which was quite painful. She said a doctor had assessed a hyperextension disorder. Medical records show the claimant was assessed with hypermobility syndrome, but the evidence does not establish that this condition has more than a minimal effect on her ability to perform basic work functions. The medical records do

not describe the claimant's joints popping out of sockets.  I therefore find that
the hypermobility syndrome is not a severe impairment.

AR at 21.  Plaintiff asserts that the ALJ's interpretation of the evidence fails to account for

medical treatment notes indicating that she experienced bilateral shoulder and hip pain when

her joints would spontaneously dislocate due to hypermobility.  Dkt. 15 at 16 (citing AR at

282).

Those cited treatment notes also indicate, however, that Plaintiff is able to prevent her

shoulder pain by being "more careful" and that physical therapy has also helped.  AR at 282.

Her treating physician noted that Plaintiff's hip pain caused by hypermobility is "momentarily

painful, but resolves quickly."  *Id.*  These treatment notes as a whole do not suggest that

Plaintiff's hypermobility syndrome causes any functional limitations, and Plaintiff's testimony

on the issue does not identify any functional limitations either.  *See* AR at 49.  Accordingly, the

ALJ accurately stated that there is no medical evidence showing that Plaintiff's hypermobility

syndrome would significantly limit her ability to perform basic work activities, and thus did

not err in finding it to be not severe.  *See* 20 C.F.R. § 404.1521 (defining a non-severe

impairment).

2. *Chronic Pain Syndrome*

Plaintiff was diagnosed with chronic pain syndrome by a number of providers.  AR at

282, 403-04, 433, 584.  Plaintiff alleges that the ALJ erred in failing to mention this diagnosis,

and thus failing to provide any reason to disregard that evidence.  Dkt. 15 at 21-22.  The

Commissioner argues that the ALJ reasonably considered Plaintiff's chronic pain as an aspect

of her degenerative disc disease and seizure disorder, and provided unchallenged reasons for

discounting Plaintiff's subjective testimony regarding *inter alia* pain, and thus did not err in

failing to credit chronic pain syndrome as a separate disorder.  Dkt. 20 at 12-19.  Plaintiff does not respond to this argument in her Reply.  Dkt. 21.

The Court agrees with the Commissioner.  The providers who mentioned Plaintiff's chronic pain syndrome discuss her pain in the context of her cervical/lumbar back problems (AR at 282, 402, 432-33, 584), and Plaintiff has failed to explain how error resulted from the ALJ's failure to consider chronic pain as a separate syndrome rather than a symptom.  Plaintiff has not challenged the ALJ's assessment of her pain testimony nor his assessment of medical opinions discussing Plaintiff's pain (AR at 24-27), and has thus failed to identify legal error resulting from the ALJ's failure to address chronic pain syndrome at step two.  Even if the ALJ should have listed chronic pain syndrome as a separate severe impairment at step two, his consideration of Plaintiff's pain symptoms when assessing her RFC would render that error harmless.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that an ALJ's failure to list an impairment as severe at step two is harmless error where limitations caused by that impairment were considered at step four).

## VIII.    CONCLUSION

For the foregoing reasons, the Court recommends that this case be AFFIRMED.  A proposed order accompanies this Report and Recommendation.

DATED this 31st day of October, 2013.

*James P. Donohue*

_____

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13